YELVERTON, Judge.
This is a worker’s compensation case. The trial court found that the plaintiff suffered a compensable accident in the course and scope of his employment with Morton Salt Company, on January 17, 1980. However, the district court concluded that the medical evidence preponderated in favor of the defendant and rejected plaintiff’s claim for compensation benefits beyond April 14, 1980. Plaintiff appealed. We affirm.
The issue on appeal is whether the trial judge was correct in concluding that plaintiff failed to prove disability beyond April 14, 1980.
Plaintiff, 28, twisted his back while lifting sacks of salt.
*503 He saw six doctors. One was a general practitioner, three were orthopedists, and two were psychiatrists.
Jefferson reported to the emergency room of Iberia Parish Hospital following the accident where he was routinely examined, given medication for pain and X-rayed. He attempted to work the day following the accident but could not.
He saw Dr. Louis Weinstein, a general practitioner of Arnaudville, on January 26, 1980. This doctor noted some tenderness in the sacral region. Jefferson continued to see this doctor a total of six times through July, 1980, complaining of lumbar pain, numbness in both legs and the left arm, insomnia, chest pain, double vision and headaches. No objective support for these varied complaints was found. Although this doctor’s notes were not too clear and he had no personal recollection of plaintiff, he thought his final diagnosis was a sacroiliac strain, a strain in the coccyx region, a strain of a muscle behind the knee, and contusions of the chest and head.
The first orthopedist to see him was Dr. Fletcher Sutton, on April 7, 1980. All objective tests were negative. Dr. Sutton was of the opinion that plaintiff was at least over-reacting if not frankly malingering because motions not involved in special testing produced no evidence of pain while requests to perform those functions in tests elicited complaints of severe pain. Dr. Sutton found nothing to support plaintiff’s complaints.
Morton Salt Company paid compensation benefits through April 14, 1980, stopping payment on the basis of the report of Dr. Sutton following his examination and tests. This doctor examined Jefferson a second time on July 16, 1981, and reported that plaintiff was able to work.
The second orthopedist to examine plaintiff was Dr. James LaFleur on May 27, 1980. Jefferson saw Dr. LaFleur six times, the last visit occurring on January 26,1981. Dr. LaFleur ordered a myelogram, catscan, and tomogram, and these tests all yielded negative findings. At the time of the final visit, Dr. LaFleur told plaintiff he could find no objective evidence to substantiate his subjective complaints, but desired an EMG and nerve conduction studies to be performed, though he expected them also to be negative. Although plaintiff never returned to see Dr. LaFleur, the tests this physician desired, later conducted by Dr. Norman Anseman, proved negative. Dr. LaFleur found contradictory responses on physical examination and thought Jefferson was exaggerating his complaints.
On March 9, 1981, plaintiff was seen by Dr. Raeburn C. Llewellyn, a New Orleans neurosurgeon. Based on one examination, Dr. Llewellyn suspected lumbar disc pathology. Plaintiff never returned to see Dr. Llewellyn.
The remaining two doctors who saw Jefferson were psychiatrists. The first, Dr. William Cloyd of Lafayette, after one examination on November 12, 1981, thought plaintiff was suffering from “hypochondria-cal neurosis” and disabled.
In March of 1982, Dr. James H. Blackburn, the other psychiatrist, examined plaintiff one time and specifically disagreed with a diagnosis of hypochondriacal neurosis. It was his opinion that plaintiff was suffering from no mental illness or emotional disability that would prevent him from returning to manual labor.
The trial court gave thorough written reasons for judgment and concluded his remarks as follows:
“The only medical evidence supporting the plaintiff’s complaints of continued pain and disability after April 14, 1980 are the opinion of Dr. Raeburn C. Llewellyn of a ‘suspected’ lumbar disc and Dr. William B. Cloyd that he suffers a hypo-chondriacal neurosis precipitated by the accident. The vast majority of the medical evidence in the case is to the direct contrary and is from physicians of equal training and reputation. While shear (sic) numbers of witnesses are not significant the Court can find no reasonable basis to accept the opinions of those two witnesses over the contrary opinions of the other witnesses in the case. Plain *504 tiffs in workman’s compensation cases bear the burden of establishing their claims by a preponderance of the evidence. Liberal construction of the law in favor of an injured employee in such cases does not relieve the claimant of his burden of proof in establishing the facts necessary to support his claim. I find that this plaintiff has simply not carried that burden.”
“The findings of a trial court on factual issues in a workmen’s compensation case are entitled to great weight and are not to be disturbed except on a showing of manifest error.” Newell v. United States Fidelity & Guaranty Company, 368 So.2d 1158 (La.App. 3rd Cir.1979). We find no manifest error in the trial court’s judgment. The judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.